IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FKF MADISON GROUP OWNER, LLC, et al.,<br><br>Debtors. | Chapter 11<br>Case No. 10-11867 (KG)<br>(Jointly Administered) |
| FKF MADISON GROUP OWNER LLC,<br>JMJS 23RD STREET REALTY OWNER LLC,<br>MADISON PARK GROUP OWNER LLC,<br>SLAZER ENTERPRISES OWNER LLC and<br>ONE MADISON FM, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MCDONALD'S CORPORATION,<br><br>Defendant. | Adversary Procedure No. _____(KG) |

## COMPLAINT FOR DECLARATORY
## JUDGMENT AND RELATED RELIEF

Plaintiffs, FKF Madison Group Owner LLC ("FKF"), JMJS 23rd Street Realty Owner LLC ("JMJS"), Madison Park Group Owner LLC ("Madison Park") and Slazer Enterprises Owner LLC ("Slazer," and, together with FKF, JMJS and Madison Park, the "Debtors"), by their counsel, Windels Marx Lane & Mittendorf, LLP and Landis Rath & Cobb LLP, and One Madison FM, LLC ("OMF," and, together with Debtors, "Plaintiffs"), by their counsel Haynes and Boone, LLP and Richards, Layton & Finger, P.A., as and for their Complaint against Defendant, McDonald's Corporation ("McDonald's"), allege as follows:

## I. NATURE OF THE ACTION

1. This action seeks a judgment re-characterizing McDonald's Claims[1] for, *inter alia*, specific performance against the Debtors' and their bankruptcy estates (collectively, the "Estates") as an unsecured claim.

2. Upon information and belief, McDonald's was the owner of certain real property located at 22 East 23rd Street, New York, New York (as more fully described below, the "East Parcel") prior to December 2005.[2] In December 2005, McDonald's sold the East Parcel to 23rd Street LLC, a non-Debtor developer, which assembled the East Parcel with certain other parcels of real estate and development rights and combined them into the multi-parcel real property underlying the condominium development project that is the subject of these bankruptcy cases (the "Assembled Property"). 23rd Street LLC then sold the Assembled Property, including the East Parcel, to the Debtors in March 2006.

3. Thereafter, beginning in 2006, the Debtors developed the Assembled Property into the property that exists today (the "Property")[3]. The Property developed by the Debtors

---

[1] "McDonald's Claims" means, collectively, the claims identified and described in Proof of Claim No. 86, filed in Case No. 10-11867 (KG), Proof of Claim No. 72, filed in Case No. 10-11868 (KG), Proof of Claim No. 72, filed in Case No. 10-11869 (KG) and Proof of Claim No. 84, filed in Case No. 10-11870 (KG).

[2] "East Parcel" means that certain real property located at 22 East 23rd Street, New York, New York, at the intersection of Madison Avenue and East 23rd Street, which has a designation of Section 3, Block 851, Lot 58 on the Tax Map of the City of New York.

[3] "Property" means any real property and real property rights owned or held by any of the Debtors or their Estates, including, without limitation, the land, the improvements, the unsold units which have been or will be developed, designed, and constructed at 23 East 22nd Street, New York, New York 10010 (and sometimes also referred to as 20 East 23rd Street) consisting of the fifty (50) story high-rise tower, containing sixty nine (69) residential units (twelve of which units have been sold, and certain other units whose ownership interests by the Debtors have been disputed by certain persons or entities not named as parties in this adversary proceeding) and a commercial unit, together with amenities and limited common elements (the "North Tower"), as well as an adjacent lot known as 23 East 22nd, together with the land underlying and abutting the North Tower and the adjacent lot, the improvements, the unsold units, all easements, air rights, development rights, sewer rights, water rights, servitudes, rights of way, streets, ways, alleys and other appurtenances thereto in any way relating to the foregoing. The Property does not include the Commercial Unit that is the subject of this adversary proceeding.

included the construction of a commercial retail unit on the ground floor of the property (as more fully described below, the "Commercial Unit")[4]. In May 2008, the Commercial Unit was transferred to an affiliated non-Debtor entity. Since that time, the Commercial Unit has not been property of the Debtors; and it is not now property of the Debtors' Estates.

4. McDonald's claims that the first purchase and sale agreement for the East Parcel provided that the purchaser would build a retail unit (*i.e.*, the Commercial Unit) to McDonald's specifications and then deed such unit back to McDonald's for nominal consideration. McDonald's asserts that the Debtors, as the subsequent purchasers of the East Parcel, continued to be bound by that obligation, but failed to honor it.

5. McDonald's further claims that in order to resolve its pending disputes with the Debtors, in or around December 2008, Debtors and McDonald's entered into a settlement agreement whereby Debtors agreed to obtain and transfer an adjoining property (the "Flamingo Property") in satisfaction of McDonald's claims. For reasons not germane to this Adversary Proceeding, Debtors' purchase of the Flamingo Property never closed (and thus the Flamingo Property also does not constitute property of the Debtors' estates). McDonald's now alleges that Debtors failed to honor their obligations under the settlement agreement as well.

6. McDonald's asserts that it has no adequate remedy at law and that it is therefore entitled to the remedy of specific performance as to the Commercial Unit and the Flamingo Property. McDonald's claims that its alleged right to specific performance to the Commercial

---

[4] The "Commercial Unit" is the commercial condominium unit in the premises known as One Madison Park Condominium and by the street number 23 East 22nd Street, Borough of Manhattan, County of New York and State of New York, said Unit being designated and described as the "Commercial Unit" in the Declaration Establishing a Condominium of said premises under Article 9-B of the Real Property Law of the State of New York, dated May 14, 2008, recorded as Document ID 2008051400951 in the Office of the City Register of the City of New York, also designated as Tax Lot 1901, in Block 851 (formerly part of Lots 20, 56, 57, 58, 59 and 60 in Block 851) of the Borough of New York on the Tax Map of the Real Property Assessment Department of the City of New York.

Unit and the Flamingo Property are not dischargeable "claims" against the Debtors under the Bankruptcy Code. McDonald's is wrong.

7. At best, McDonald's only has a monetary claim against the Debtors. Its claim for specific performance fails as a matter of law and the McDonald's Claims are dischargeable as "claims," as that term is defined under Section 101(5) of the Bankruptcy Code. First, as a matter of New York law, no right to specific performance exists because (a) the relevant agreements expressly provide for liquidated, money damages and McDonald's, therefore, has an adequate remedy at law; (b) McDonald's has already exercised its legal remedy by drawing on the proceeds of a letter of credit to satisfy its claim for money damages of $5 million; and (c) there is impossibility of performance since neither the Commercial Unit nor the Flamingo Property are property of the Debtors' estates. Second, under applicable Third Circuit law, McDonald's alleged right to specific performance is reducible to money damages, and therefore treatable as, a claim in bankruptcy.

## II. **THE PARTIES**

8. Plaintiff FKF is a Delaware limited liability company, having its principal place of business at P.O. Box 49249, Charlotte, North Carolina, 28277, and is a debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case.

9. Plaintiff JMJS is a Delaware limited liability company having its principal place of business at P.O. Box 49249, Charlotte, North Carolina, 28277, and is a debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case.

10. Plaintiff Madison Park is a Delaware limited liability company having its principal place of business at P.O. Box 49249, Charlotte, North Carolina, 28277, and is a debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case.

11. Plaintiff Slazer is a Delaware limited liability company having its principal place of business at P.O. Box 49249, Charlotte, North Carolina, 28277, and is a debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case.

12. Each of the Debtors is a tenant in common owner of the Property, with the following respective undivided interests: Slazer, 78%; Madison Park, 12%; JMJS, 4%; and FKF, 6%.

13. Plaintiff OMF is a Delaware limited liability company with a place of business at 60 Columbus Circle, New York, New York 10023. Each of the Debtors is obligated to OMF pursuant to the terms of certain loan documents (the "Loan Documents") evidencing prepetition indebtedness, which has been allowed by the Bankruptcy Court in the amount of $234,150,572.72 (the "OMF Prepetition Indebtedness"). The OMF Prepetition Indebtedness is secured by, among other things, valid, enforceable, perfected liens, mortgages and security interests in, to and against the Property (the "OMF Prepetition Liens"). From March 2006 until May 2008, OMF's predecessor-in-interest held first priority liens, mortgages and security interests in, to and against the Commercial Unit. However, on or about May 14, 2008, OMF's liens and mortgages against the Commercial Unit were released by OMF's predecessor-in-interest coincident with the transfer of the Commercial Unit to the non-Debtor entity. *See* paragraph 47, infra.[5]

14. On or about September 16, 2011, OMF provided to Debtors a Binding Commitment for OMF or its Designee to be Plan Funder under the OMF Plan (the "OMF Commitment"). Pursuant to the OMF Commitment and accompanying OMF Plan of

---

[5] Nothing herein shall be deemed a waiver or release of any rights, claims or remedies of OMF against any previous holder of any portion of the OMF Prepetition Claims or OMF Prepetition Liens or any other person or entity or any of their affiliated entities on any matter or issues whatsoever.

Reorganization, which was filed with the Court on October 31, 2011, OMF agreed to provide capital for the restructuring of the Debtors, subject to higher and better competing plan terms.

15. Defendant McDonald's is, upon information and belief, a Delaware Corporation with its headquarters located at One McDonald's Plaza, Oak Brook Illinois 60523.

### III. STATUTORY PREDICATE

16. The statutory predicates for the relief sought herein are Sections 501 and 502(a) of title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 3007(a) and 7001(2) of the Federal Rules of Bankruptcy Procedure, and Section 2201 of Title 28, United States Code.

### IV. JURISDICTION AND VENUE

17. This Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.

18. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B) (C) and (O).

19. Venue in this Court is proper pursuant to 28 U.S.C. §1409.

### V. THE BANKRUPTCY

20. On June 8, 2010 (the "Petition Date"), involuntary petitions under chapter 7 of title 11 of the Bankruptcy Code were filed in this Court against each of the Debtors by certain petitioning creditors, thereby commencing the Debtors' involuntary Chapter 7 cases.

21. On November 19, 2010, this Court entered Orders for relief in the Chapter 7 Cases and entered Orders converting the Chapter 7 Cases to cases jointly administered under Chapter 11 of the Bankruptcy Code [D.I. 118].

22. Debtors are debtors-in-possession under Bankruptcy Code §§1107 and 1108. John Fioretti is the duly appointed President, Secretary and Treasurer of each of the Debtors.

## VI. FACTS

23. McDonald's previously owned the East Parcel, which included a low-rise, two-story building out of which a McDonald's restaurant franchise operated for several years.

The First Purchase And Sale Agreement

24. On or about December 15, 2005, McDonald's entered into a Purchase and Sale Agreement with an entity known as 23rd Street LLC, whereby McDonald's agreed to sell the East Parcel to 23rd Street LLC, for $3.4 million and certain other consideration (the "McDonald's Contract"). 23rd Street LLC was wholly owned by Atlantic Development Group, LLC, a New York Limited Liability Company, having an address at 1065 Avenue of the Americas, 27th Floor, New York, New York 10018.

25. The McDonald's Contract contemplated that 23rd Street LLC would develop a high-rise condominium building on the East Parcel, with at least two condominium units: (1) a residential unit, consisting of apartments and (2) the Commercial Unit on the first floor.

26. The McDonald's Contract also contained a provision contemplating that 23rd Street LLC would build the Commercial Unit to McDonald's specifications by a date certain, and then deliver a deed for the Commercial Unit to McDonald's in fee simple for no additional consideration, other than $10 nominal consideration.

The Memorandum of Obligations

27. Pursuant to Section 4.4(f) of the McDonald's Contract, 23rd Street LLC's obligations with respect to the Commercial Unit were evidenced in the Memorandum of Obligations, dated December 22, 2005, between 23rd Street, LLC and McDonald's, filed against the Property on March 15, 2006, in New York City Register File No. 2006000147908 (the "MOO").

28. On its face, the MOO provided that it is "expressly subordinate to any existing or future mortgages placed on the Property."

29. Section 4.4(f) of the McDonald's Contract also provided that the MOO "shall be expressly subordinate to any existing or future mortgages placed on the Property."

The McDonald's Contract Provisions Concerning
Failure to Deliver the Commercial Unit

30. Pursuant to the McDonald's Contract, if 23rd Street LLC failed to construct the Commercial Unit in accordance with the agreement and then convey the Commercial Unit back to McDonald's within a specified time, then 23rd Street LLC was to pay McDonald's a delay payment of $1,582 per day (the "Delay Payment").

31. The McDonald's Contract also provided that if 23rd Street LLC should fail to convey the Commercial Unit to McDonald's by the 48th month after the closing, McDonald's had the express right to terminate the McDonald's Contract, in which case 23rd Street LLC would have the obligation to pay McDonald's the difference between the Delay Payments that had been made and $5 million (the "Termination Payment").

32. In other words, in the McDonald's Contract, McDonald's agreed to liquidated damages of $5 million in the event 23rd Street LLC did not deliver the Commercial Unit, built to McDonald's specifications, within 48 months of the closing.

33. The McDonald's Contract further provided that in no event would McDonald's be entitled to Delay Payments in excess of $5.0 million.

34. Moreover, under the terms of the McDonald's Contract, McDonald's had no right to specific performance. The liquidated damages of $5.0 million was McDonald's sole and exclusive remedy.

35. In this regard, the McDonald's Contract provided that McDonald's "damages would be difficult to compute but that the Delay Payment and, ultimately, the Termination Payment represent good faith estimates of the damages incurred by [McDonald's] as a result of the failure to timely convey the [Commercial Unit] . . . ."

36. To the extent that McDonald's exercised its right to terminate the agreement and draw down on the balance of the $5 million LOC (described in paragraph 37, *infra*), the McDonald's Contract provided that 23rd Street LLC "shall be relieved and released from the obligation to convey the [Commercial Unit] to [McDonald's] or its designee."

37. The McDonald's Contract further provided that, as security for the Delay Payment, the Termination Payment and 23rd Street LLC's obligation with respect to transfer taxes and recording charges, at the closing, 23rd Street LLC would provide McDonald's with a clean, irrevocable standby letter of credit (the "LOC") in the amount of $5 million.

The Letter of Credit

38. In accordance with the McDonald's Contract and in order to secure certain obligations thereunder, on or about December 21, 2005, 23rd Street LLC provided McDonald's with irrevocable, transferrable standby letter of credit number S93058850, in the amount of $5 million, issued by Signature Bank on behalf Atlantic Development Group ("ADG"), and confirmed by Bank of New York (the "LOC"). Pursuant to an agreement between ADG, one of its principals, Peter Fine ("Fine") and Signature Bank, ADG and Fine were obligated to reimburse Signature Bank for any draws made under the LOC.

The LOC Agreement and Debtors' Cash Collateral

39. On or about March 16, 2006, Atlantic Development Group, Peter Fine, and Slazer Enterprises LLC entered into an Assignment and Assumption Regarding Transfer of

Reimbursement Obligation for Letter of Credit (the "LOC Agreement"), whereby ADG and Fine were released from all obligations relating to the LOC, and Slazer Enterprises LLC assumed all obligations under the LOC. Signature Bank consented to the LOC Agreement.

40. Pursuant to the LOC Agreement, Slazer Enterprises, LLC deposited $5 million with Signature Bank as cash collateral (the "Cash Collateral"). Under the terms of the LOC Agreement, after the termination or expiration of the LOC, any funds remaining from the Cash Collateral were to be returned by Signature Bank to Debtors.

The Property

41. After acquiring the East Parcel, 23rd Street LLC assembled the East Parcel (22 East 23rd Street) into a larger parcel for development (*i.e.*, the Assembled Property) by combining it with adjoining parcels consisting of 20 East 23rd Street, development rights acquired from 18 East 23rd Street, development rights/cantilever easement from 24 East 23rd Street and development rights acquired from 26 East 23rd Street. All of these parcels and rights collectively formed the real property upon which the Debtors subsequently developed the Property.

The Transfer of the Assembled
Property to Debtors

42. In or about December 22, 2005, 23rd Street LLC and Refsnart Corporation, a predecessor-in-interest of the Debtors with regard to the acquisition of the Assembled Property, entered into a purchase and sale agreement with respect to the Assembled Property (as amended, the "Assembled Property PSA"). The Assembled Property PSA contemplated a February 20, 2006 closing date, which date was subsequently extended to March 20, 2006.

43. In connection with the closing of the Assembled Property PSA, on or about March 17, 2006, 23rd Street LLC and Debtors entered into an Assignment Agreement whereby

23rd Street LLC assigned, sold and transferred, among other things, all of its surviving rights under the McDonald's Contract to the Debtors.

44. On March 16, 2006, 23rd Street LLC executed a Deed transferring the Assembled Property to Debtors, which was subsequently recorded on May 15, 2006.

45. After taking title to the Assembled Property in March 2006, Debtors implemented a plan to construct and develop the Assembled Property into the Property.

46. On or about March 15, 2006, in connection with the Debtors' purchase and development of the Property, the Debtors also entered into and obtained secured financing pursuant to certain loan agreements with predecessors-in-interest to OMF, and granted OMF's predecessors-in-interest liens, mortgages and security interests (*i.e.*, the OMF Prepetition Liens) in, to and against the Property. The incurrence of secured financing had been expressly contemplated in the McDonald's Contract and the MOO, each of which provided that the MOO would be "expressly subordinate to any existing or future mortgages placed on the Property."

The Transfer of the Condominium Unit

47. On or about May 14, 2008, by Condominium Unit Deed dated May 14, 2008, the Debtors transferred the Commercial Unit to an affiliated non-Debtor entity known as 24 East 23rd Commercial, LLC. Contemporaneously therewith, OMF's predecessor-in-interest released its liens over the Commercial Unit.

48. Accordingly, as of May 14, 2008, Debtors no longer owned the Commercial Unit, and the Commercial Unit is not now property of the Debtors' Estates.

The Dispute with McDonald's

49. During the course of the Debtors' development of the Property, a dispute arose between McDonald's and the Debtors concerning the Commercial Unit.

50. McDonald's took the position that the MOO entered into with 23rd Street LLC and recorded with the New York City Register on March 15, 2006 created an encumbrance on the East Parcel that runs with the land, binding all successors, assigns and future purchasers, including the Debtors, to comply with the obligation under the McDonald's Contract to deliver a deed to McDonald's to the Commercial Unit, built to McDonald's specifications. The Debtors disputed McDonald's claim and denied that they were obligated to transfer the Commercial Unit to McDonald's.

The Settlement Agreement

51. In an effort to resolve their dispute, on or about December 19, 2008, McDonald's, Debtors, 24 East 23rd Commercial, LLC, and Park Madison Associates, LLC, entered into a settlement agreement, whereby Debtors agreed to assign to McDonald's a contract to purchase a property located at 26 East 23rd Street (the "Flamingo Property"), in satisfaction of any purported obligation to deliver the Commercial Unit under the McDonald's Contract (as amended, the "Settlement Agreement").

52. The Settlement Agreement provided that the closing on the Flamingo Property was to take place on February 12, 2009, but granted Debtors the right to exercise a 32-day adjournment, to March 16, 2009 (the "Outside Closing Date").

53. The Settlement Agreement also provided that if Debtors did not deliver a deed to the Flamingo Property to McDonald's on or before the Outside Closing Date, McDonald's had the right to, *inter alia*: (i) enter the Flamingo Property and exercise self-help to complete the relevant work Debtors had agreed to perform under the Settlement Agreement; (ii) commence an action against the Debtor's for specific performance to compel Debtors to complete such work; (iii) commence an action against the Debtors for specific performance to compel the Debtors to

cause Flamingo LLC, the Flamingo Property owner ("Flamingo"), to deliver the Flamingo Property deed to McDonald's or its designee pursuant to the terms of the Settlement Agreement; (iv) declare the assignment of the Flamingo contract effective upon notice to the Debtors and acquire fee title to the Flamingo Property directly from Flamingo; (v) commence an action against Debtors for money damages incurred by McDonald's; and/or (vi) pursue any and all remedies available to McDonald's at law or in equity under the Settlement Agreement, the McDonald's Contract or otherwise. Thus, as indicated above, the Settlement Agreement expressly contemplated money damages as a possible remedy. Moreover, to the extent the Settlement Agreement provided McDonald's a right to seek specific performance, such right only arose with respect to the Flamingo Property and not the Commercial Unit.

54. The Settlement Agreement further provided that if the Debtors did not deliver the deed for the Flamingo Property on or before the Outside Closing Date, McDonald's would be entitled to default payments in the amount of $13,698.63 per day ("Default Payments"), which could be satisfied by McDonald's drawing down on the LOC.

55. The delivery of the deed for the Flamingo Property did not occur on or before March 16, 2009 (*i.e.*, the Outside Closing Date).

56. On or about March 16, 2009, Debtors, McDonald's, 24 East 23rd Commercial, LLC, and Park Madison Associates, LLC, entered into a First Amendment to the Settlement Agreement (the "First Amendment").

57. The First Amendment extended the Outside Closing Date to April 1, 2009, but preserved McDonald's right to collect Default Payments beginning on the original Outside Closing Date of March 16, 2009.

58. The transfer of the Flamingo Property did not close on or before April 1, 2009.

59. On or about April 1, 2009, Debtors, McDonald's, 24 East 23rd Commercial, LLC, and Park Madison Associates, LLC, entered into a Second Amendment to the Settlement Agreement (the "Second Amendment").

60. The Second Amendment extended the Outside Closing Date to July 1, 2009, but again preserved McDonald's right to collect Default Payments beginning on March 16, 2009.

The Draws on the LOC

61. During the period up to and including June 2009, McDonald's drew approximately $1.2 million from the LOC in liquidated damages under the McDonald's Contract and Settlement Agreement.

62. In late June, 2009, the parties anticipated that the closing on the transfer of the Flamingo Property to McDonald's would occur on June 30, 2009. In preparation for the closing, the parties agreed that the approximately $3.8 million remaining balance of the LOC (the "Escrowed Funds") would be drawn down, and transferred to the escrow account of McDonald's' attorneys, Westerman, Ball, Ederer, Miller & Sharfstein, LLP (the "Westerman Firm" or "Original Escrow Agent"). The Escrowed Funds were to be utilized to pay certain closing costs, expenses and additional liquidated damages of McDonald's in the amount of approximately $2.6 million, leaving a balance of approximately $1.2 million to be paid to Debtors.

63. The anticipated June 30, 2009 closing on the Flamingo Property did not occur, and the Original Escrow Agent continued to hold the Escrowed Funds.

64. Upon information and belief, in connection with each of the draws on the LOC, Signature Bank withdrew an equivalent amount from the Cash Collateral to satisfy the

reimbursement obligations of Slazer Enterprises LLC under the LOC Agreement. Thus, by late June 2009, both the LOC and the Cash Collateral had been fully drawn.

65. On September 8, 2009, the Original Escrow Agent requested the consent of Debtors to pay to McDonald's additional damages of approximately $702,496 from the Escrowed Funds, leaving a balance of approximately $3.1 million (the "Escrow Balance"). Debtors consented to this withdrawal from the escrow account. Upon information and belief, Debtors did not consent to any further withdrawals from the Escrow Balance.

66. Upon information and belief, in late 2009, the law firm of Herrick, Feinstein LLP ("Herrick") replaced the Westerman Firm as attorneys for McDonald's and as escrow agent.

67. Upon information and belief, in late 2009, the Escrow Balance was transferred to Herrick.

68. Upon information and belief, at some time thereafter, the Escrow Balance was paid to McDonald's as liquidated damages under the McDonald's Contract and Settlement Agreement.

McDonald's Proofs of Claim

69. On or about April 11, 2011, McDonald's filed the McDonald's Claim in the Debtors' bankruptcy cases, asserting that the Debtors failed to comply with their alleged obligation under the MOO to deliver the Commercial Unit to McDonald's under the McDonald's Contract. The McDonald's Claim further asserts that the Debtors failed to comply with their obligations under the Settlement Agreement to deliver the Flamingo Property. As a result, McDonald's asserts that it has no adequate remedy at law and its resulting claims for specific performance are not dischargeable as "claims" under the Bankruptcy Code.

## CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

70. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth at length herein.

71. McDonald's takes the position that the MOO entered into with 23rd Street LLC and recorded with the New York City Register created an encumbrance on the Property that runs with the land, binding all successors, assigns and future purchasers, including Debtors, to comply with the obligation to deliver the Commercial Unit to McDonald's under the McDonald's Contract.

72. McDonald's also takes the position that the Debtors breached the McDonald's Contract and the Settlement Agreement by not delivering the Commercial Unit and the Flamingo Property, respectively.

73. As a result, McDonald's claims it has no adequate remedy at law and its resulting claims for specific performance seeking the delivery of the Commercial Unit and the Flamingo Property under the McDonald's Contract and the Settlement Agreement, respectively, are not dischargeable as "claims" under the Bankruptcy Code.

74. McDonalds is wrong and the Plaintiffs dispute each and every one of McDonald's claims, including those set forth in Paragraphs 71 through 73 of this Complaint.

75. McDonald's is not entitled to specific performance and its claims, if any exist against the Debtors, are dischargeable as "claims" under the Bankruptcy Code because, *inter alia*:

(a) As a matter of New York law, no right to specific performance exists because the McDonald's Contract expressly provides for liquidated, money damages and McDonald's, therefore, has an adequate remedy at law;

(b) As a matter of New York law, no right to specific performance exists because McDonald's exercised its legal remedy by drawing on the proceeds of the LOC to satisfy its claim for money damages in the amount of $5 million;

(c) Since the Debtors do not own the Commercial Unit, and the transfer of the Commercial Unit by the Debtors to McDonald's would therefore be impossible, as a matter of New York law, McDonald's is not entitled to an order of specific performance directing the transfer of the Commercial Unit to McDonald's;

(d) Since the Debtors do not own the Flamingo Property, and the transfer of the Flamingo Property by the Debtors to McDonald's would therefore be impossible, as a matter of New York law, McDonald's is not entitled to an order of specific performance directing the transfer of the Flamingo Property; and

(e) Under applicable Third Circuit law, McDonald's alleged right to specific performance is reducible to money damages, and should therefore be treated as a "claim" in bankruptcy.

76. A justiciable controversy exists.

77. As a result of the foregoing, Plaintiffs are entitled to a judgment determining that McDonald's has no claim, right or entitlement to the remedy of specific performance and re-characterizing the McDonald's Claim as an unsecured claim.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendant:

i) declaring that McDonald's has no claim for specific performance;

ii) re-characterizing McDonald's Claim as an unsecured claim;

iii) awarding Plaintiffs their attorneys' fees and costs; and

iv) awarding such other, further relief that the Court deems just and proper.

Date: Wilmington, Delaware
November 11, 2011

**LANDIS RATH & COBB LLP**

_____
William E. Chipman, Jr. (No. 3818)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*[Proposed] Special Counsel for Debtors FKF Madison Group Owner LLC, JMJS 23rd Street Realty Owner LLC, Madison Park Group Owner LLC and Slazer Enterprises Owner LLC*

**WINDELS MARX LANE & MITTENDORF, LLP**
Craig P. Murphy (cmurphy@windelsmarx.com)
John D. Holden (jholden@windelsmarx.com)
Leslie S. Barr (lbarr@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215

*Special Counsel for Debtors FKF Madison Group Owner LLC, JMJS 23rd Street Realty Owner LLC, Madison Park Group Owner LLC and Slazer Enterprises Owner LLC*

**AND**

**RICHARDS, LAYTON & FINGER, PA**

/s/ *Russell C. Silberglied*

---
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302 651-7701

**- and –**

**HAYNES AND BOONE, LLP**
Lenard Parkins
(lenard.parkins@haynesboone.com)
Lawrence Mittman
(lawrence.mittman@haynesboone.com)
Louis Solomon
(louis.solomon@haynesboone.com)
Trevor R Hoffmann
(trevor.hoffman@haynesboone.com)
Haynes and Boone, LLP
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone: (212) 659-4993
Facsimile: (212) 884-9558

*Counsel for Plaintiff One Madison FM, LLC*